Prickett v. McFadden.

OLIVER T. PRICKETT

v.

DAVID P. McFADDEN.

1. CONTRACTS—WARRANTY.—The warranties which accompany a sale of chattels, are of two kinds—as to title and of quality; and such warranties may be either express or implied. When there is a breach of warranty as to

quality, the vendee may rescind and return the goods, or he may set up the breach as a defense to an action for the price.

2. RESCISSION.—If a party would rescind a contract of sale, he must act promptly so that the other party may be put *in statu quo*, and a rescission cannot take place ~~by~~ mutual consent after such delay that the circumstances of the parties are altered by a part execution.

ERROR to the Circuit Court of Jackson county; the Hon· O. A. HARKER, Judge, presiding. Opinion filed April 7, 1881.

Messrs. BARR & LEMMA, and Mr. ANDREW D. DUFF, for plaintiff in error; that where a purchaser has paid the price, in case of a false warranty, he may bring his action on the breach without returning the goods, or he may return the goods and sue for the price, cited Shields v. Pettee, 4 Com. 122; 1 Parsons on Contracts, 591; Oxendale v. Wetherell, 9 B. & C. 386 ; Reed v. Rann, 10 B. & C. 441; Bowker v. Hoyt, 18 Pick. 555.

If the vendor refuses to receive the goods when tendered, the purchaser may sell them at their market value, but must account to the vendor for their proceeds: Chesterman v. Lamb, 2 A. & E. 129; McKinzie v. Hancock, Ry. & M. 436; McLean v. Dunn, 4 Bing. 722; Woodward v. Thacher, 21 Vt. 580; 1 Parsons on Contracts, 593.

Unless there is fraud or the contract is wholly unexecuted, a breach of warranty does not authorize the purchaser to rescind the contract or return the property: Crabtree v. Kile, 21 Ill. 180; Kase v. John, 10 Watts, 109; Vorhees v. Earl, 2 Hill, 288; Casey v. Gruman, 4 Hill, 626; West v. Cutting, 10 Vt. 536; Myer v. Dwinell, 3 Wms. 298.

When the purchaser has the right to return the goods, he must do so within a reasonable time: Woods v. Kirk, 8 Foster 324; Weed v. Page, 7 Wis. 503; Garland v. Spencer, 46 Me. 528; Doane v. Dunham, 65 Ill. 512; · Frankenfield v. Freyman, 1 Har. 56; Dailey v. Green, 3 Har. 118.

A party cannot receive and retain a part of that for which he bargained, and then refuse to perform his part of the agreement: Benjamin on Sales, 452; Ellen v. Topp, 6 Exch. 424; Behn v. Burness, 3 B. & S. 751.

Prickett v. McFadden.

Mr. Wm. J. Allen, Mr. W. H. Woodward, and Mr. F. E. Albright, for defendant in error ; that the plaintiff could not recover upon an implied contract, because there can be no implied contract where goods were sold under an express agreement, cited McMillan v. Vanderlip, 12 Johns, 165 ; Jennings v. Camp. 13 Johns, 94; Ketchum v. Evertson, 13 Johns, 365; Stevens v. Beard, 4 Wend. 604 ; Whitney v. Sullivan, 7 Mass., 109; Champlain v. Butler, 18 Johns, 169; Robertson v. Lynch, 18 Johns, 451 ; Champlain v. Rowley, 18 Wend. 187.

Indebitatus assumpsit will not lie in this case : Mead v. Degolyer, 16 Wend. 566.

Plaintiff should have declared specially : Factor v. Heath, 12 Wend. 477 ;  Lendregan v. Crowley, 12 Conn. 563 ; Thornton v. Wynn, 12 Wheat. 183 ; Ashley v. Reeves, 2 McCord, 432.

Wall, P. J.  The plaintiff in error sold the defendant in error a stock of drugs.  The terms of this sale are in dispute. According to the plaintiff he sold the goods by an invoice which he received from one Patten of whom he had a short time before bought the same stock and the goods so purchased of Patten, less about one hundred dollars worth were all there at the time of the sale to the defendant ; that the invoice amounted to $1,950 ; that he was to take out certain articles, leaving the amount sold worth $1,800 and that defendant was to take the stock so remaining on that basis, and was to pay therefor a stock of groceries valued at $750, a farm valued at $1,000, and was to pay cash to a firm in Louisville the sum of $50.  For the wheat on the farm, which he was to keep, he was to convey to plaintiff a lot in Carbondale valued at $150.

Defendant's version is that plaintiff represented that the drugs were worth $1,900, for which he proposed to take the farm at $1,000, the stock of groceries at $700, the lot in Carbondale at $150, and $50 to be paid to the firm in Louisville. When the parties had apparently reached a point of agreement as to the details of the trade, the defendant said he wanted to know that the goods were all there, and at his instance he and the plaintiff, with some assistance, spent a part of one

day in comparing the goods with the Patten invoice ; and it is testified by the witness Boren, who was called by the plaintiff, that they then went over the goods which were on the shelves on the east side of the room and about half way on the west side, and when they had got to this point the plaintiff, who was a mail agent, said it was time for him to go to his train and that he could not remain longer ; but at the instance of defendant he did remain for a short time longer, and this witness states that after some further comparison of the goods with the invoice, the defendant concluded to take the stock at the invoice, and thereupon the plaintiff gave him the key to the drug store, and received from him the key to the grocery store. The defendant testifies that on this occasion when he and the plaintiff were making an examination of the goods, the plaintiff said he could not stay any longer, and assured him that there were goods to the amount of $1,900 at whole-sale prices, and if the goods were not found there he would put them there, and that upon the faith of this representation he then closed the trade. The defendant introduced other evidence tending to prove that state of facts, and on this point there is a conflict of testimony, as to which we refrain from expressing an opinion, as the case must be submitted to another jury for trial.

The defendant also states that having so received possession of the goods he opened the store for business, making sales in the ordinary course, and that in about two weeks he discovered that the stock amounted to considerably less than $1,900, and that, as appeared by an invoice taken a month after the trade, the value was barely eleven hundred dollars.

He futher says that a week or two after the trade, the plaintiff called on him for a deed for the farm, but that he then declined to make it, and that he so declined, and so told the plaintiff, because he was not satisfied that he had got the full amount of goods he had bargained for. He finally sold the stock to his brother for the sum of twelve hundred dollars, having been in possession ever since the trade, during which time he had reduced the stock by sales in the ordinary course of business, and had replenished to some extent by adding

Prickett v. McFadden.

fresh goods. Upon the farm there was a mortgage for $200, and it was a part of the agreement that to secure plaintiff against this lien, defendant was to give him a mortgage on two lots in Carbondale, but about the time or shortly after that plaintiff requested the deed, defendant conveyed these lots to his father, though, as he asserts, with the understanding that the latter would make the mortgage if plaintiff should comply with his part of the contract. After defendant sold the stock to his brother, plaintiff brought his action of indebitatus assumpsit for the value of the goods. A trial by jury resulted in a verdict for defendant, and a motion for a new trial having been overruled, and judgment entered on the verdict, plaintiff brings the record here and assigns various errors as to the action of the court in giving and refusing instructions and in overruling the motion for a new trial. It is not to be doubted that plaintiff sold, and defendant purchased the specific lot of goods in question, and that there is no breach of warranty as to the title or quality, but the dispute is entirely as to quantity.

On the one hand, it is urged that the seller made no representation except that the Patten invoice would hold out, and there is no evidence that it did not. On the other, it is is contended that the seller expressly asserted that the stock was worth $1,900, at wholesale prices—that if there was any shortage, he would make it good—and that there was a shortage amounting to some eight hundred dollars. Both parties assert that they have ever been ready and so assured each other to live up to their respective contracts as they understood them, but as they disagreed so radically as to the terms, they were, of course, not able to adjust the matter.

The warranties which accompany a sale of chattels, are of two kinds in respect to the subject-matter, viz.: a warranty as to the title, and a warranty of quality. They are also of two kinds in respect to their form,—they may be express or implied. When there is a breach of warranty as to quality, the vendee may rescind and return the goods, or he may set up the breach as a defense, in whole or in part, to an action for the price. If he wishes to rescind, he must act promptly ; delay or any act

equivalent to acceptance, employment or disposition of the goods after he knows or should know their deficiency if it exists, will be construed either into an admission that there was no such deficiency, or into a waiver of his right to rescind because of such deficiency. Parsons on Contracts, Vol. I, Book 3, chap. 5: A rescission cannot occur without mutual consent if circumstances are so altered by a part execution that the parties cannot be put in *statu quo*, for if the contract is rescinded at all it must be *in toto*. 2 Kent's Com. 650. This case seems to be one where a rescission would be impracticable if any considerable time was permitted to elapse, and according to the defendant's own testimony it was some two weeks after he got possession before he discerned the alleged shortage, and in the meantime he had been selling in the usual course of business. Plaintiff had also been in possession of the grocery store, and it is to be presumed that he had also been selling and changing the character of the stock. Therefore it was idle for the defendant to suggest, as he did, at this time, or afterwards, that plaintiff should take back his drugs and give back to defendant his groceries. It was impossible for the parties then to be placed in *statu quo*, and the defendant was in no position then to require the plaintiff to rescind.

When defendant took the drugs he had the invoice partly, probably more than half completed; the plaintiff not willing to remain longer, asserted—as he says—that the invoice would hold out as defendant says that there were goods to the value of nineteen hundred dollars. Whatever there was, it was all present and all delivered, and the contract was executed so far as the seller was concerned. If the buyer intended to exercise a right of rescission, the peculiar circumstances of the transaction were such that it devolved upon him to ascertain at once what the deficiency was and offer to return the goods before the situation changed. He might easily have completed the invoice that day or within a very short time. Good faith required him to act promptly, and he cannot be permitted to retain the goods without examination, sell in the ordinary course of business for two weeks and then assert a right to rescind. Having delayed until the parties could not

be placed in *statu quo* his only remedy must lie in a reduction of the price to be paid. If it is urged that the defendant was by the trade to exchange certain property for these goods, and that he is now called on to pay money—the answer is that by his own act and delay he has rendered a rescission impossible and that he will not be allowed to take advantage of this condition of things and thereby retain the goods without paying for them. Counsel for plaintiff refer us to a number of cases where the vendor, of a specific quantity of goods, as, for instance, a number of bushels of grain at a certain price per bushel, to be paid in cash, having received and appropriated a part only of the quantity purchased, the vendor refusing to deliver the balance is liable for the amount actually received—This case is unlike such a case in two respects. First the entire quantity sold is actually delivered and there is an alleged deficit in the amount it was affirmed to be, or to be worth—Second the price was to be paid mainly in specific articles of property. In the cases and authorities which have fallen under our notice the breach of warranty is as to quality and not as to quantity.

It might be said, however, that the alleged affirmation in this case, while it was in terms as to quantity or value merely, stands on the same grounds of reason and justice as an affirmation as to quality, and that in a certain sense it does relate to the quality. The consideration to be paid by the vendee included another stock of goods worth an agreed sum, a farm worth an agreed sum, a lot worth an agreed sum, and fifty dollars to be paid in cash to a third party. These things he was willing to give for the stock of drugs, if worth a certain sum, as he says, or if corresponding with a certain invoice, as the vendor says; and while the goods were all in sight and all present ready to be delivered, yet consisting of a great number and variety of articles having different prices, the aggregate value was unknown and the vendor made an affirmation as to the quantity, on the faith of which the trade was closed. It would seem that such a case is within the reason and spirit of the rules applicable to warranty of quality, and that if the vendee had taken such prompt action as was within his power

to ascertain the truth, and if there was a breach had promptly rescinded the contract, so that the vendor would have been in *statu quo*, he might have avoided all liability, but in our opinion he did not so act. It is not necessary to consider and discuss the various instructions in detail. In so far as they are opposed to the views here expressed they should be modified. If the plaintiff made a warranty as to the quantity of the goods upon the faith of which the trade was made, and if the goods did not come up to the warranty he can recover only their value, less any payment that may have been made and less any damage the defendant may have sustained, if any can be shown by reason of not getting what he bargained for. The judgment is reversed and the cause remanded.

Reversed and remanded.